STATE OF TENNESSEE, ex rel., etc., v. JOSEPH S. MONDAY, et ux.

Eastern Section.   February 11, 1928.

Park & Park, of Jefferson City, for appellant.
Johnson & Cox, of Knoxville, for appellee.

SENTER, J.   The bill in this cause was filed by the State of Tennessee, ex rel. George R. Calhoun, State Game Warden, against Joseph S. Monday, seeking to enjoin the operation of the fish trap alleged in the bill to be owned and operated by the defendant Monday, in Holston River in Knox county, Tennessee, in violation of law.   Mary L. Monday, the wife of defendant Joseph S. Monday, entered her appearance in the cause, for the purpose of answering the bill, and making defense to the bill, alleging that the title to the property in question belongs to her and not to the defendant, Joseph S. Monday.   By her voluntary act she became a defendant for the purpose of having the questions involved in this cause settled.   The answer denies the material allegations in the bill, except that it is admitted that she has a fish trap on her property, but denies

that game fish are taken in this fish trap in violation of the laws of the State of Tennessee. They deny that they have made large sums of money in the operation of this fish trap, but admit that they have a man living on the property who has charge of the same, and that he takes from said trap common and ordinary fish, not classed under the law as game fish.

The original bill also alleges that chapter 377 of the Acts of 1899 permitting the operation of said fish trap in Knox county, is unconstitutional, and violative of Art. 2, sec. 8 of the State Constitution. The answer denies that said act is unconstitutional.

. If this case involved only the constitutionality of the act referred to, the appeal should have been to the Supreme Court under the provisions of chapter 100 of the Acts of 1925. However, there are other questions made, and the Chancellor denied the relief sought by the State, and the injunction restraining the operation of the fish trap in question on the grounds that the chancery court is without jurisdiction to enjoin the operation of the fish trap or to abate the same as a nuisance, holding that the remedy of the complainant, if any, lies solely in the criminal court.

The Chancellor held that chapter 377 of the Acts of 1899 is unconstitutional and void because violative of Art. 2, sec. 8 of the State Constitution, and that the defendants are not protected in the operation of the fish trap by the said act. The Chancellor further held that if said chapter 377 of the Acts of 1899 was not unconstitutional, that said act was repealed by the General Game and Fish Act of 1923. The Chancellor further held that the operation of the fish trap by the defendants has been and is unlawful. But the relief sought was denied and the bill dismissed at the cost of complainant, solely on the ground that the chancery court was without jurisdiction to entertain the cause as above stated.

From so much of the decree as held that the chancery court was without jurisdiction to entertain the cause and to enjoin the operation of the fish trap by the defendant, and in refusing to decree the abatement of the fish trap, and in dismissing complainant's suit, the complainant prayed and was granted an appeal to this court, which appeal has been duly perfected and errors assigned.

To so much of the decree and to the action of the court in holding and decreeing that chapter 377 of the Acts of 1899, attempting to amend chapter 127 of the Acts of 1895 is unconstitutional and void; and to the action of the court in holding and decreeing that chapter 377 of the Acts of 1899 was repealed by the passage of the general game law of 1923; and to so much of the decree as held that the fish trap in question was being unlawfully operated, the defendant excepted and prayed and appeal from the decree of the Chancellor

on these matters, and which appeal has been duly perfected and errors assigned.

We will first consider and dispose of the assignments of error of defendant.

We deem it unnecessary to consider the first assignment of error of the defendant, and which involves the constitutionality of chapter 377 of the Acts of 1899, because, as we construe chapter 100 of the Acts of 1925, the jurisdiction is conferred solely on the Supreme Court to pass upon and determine the constitutionality of legislative enactments, and for the further reason, that in the view of the case we have taken it does not become necessary to pass upon the constitutionality of said act, which purports to be a special act for Knox county.

The other assignments of error of the defendants will be considered and disposed of collectively.

It appears that Mrs. Monday is the owner of an island in Holston River in Knox county, Tennessee, and that the waters of Holston River flow in the main on one side of this island, that is, in quantity but not in width, the water being more shallow on the south side of the island. This part of the stream is referred to as a sluice. The fish trap is constructed across this portion of the river running on the south side of the island, by a dam running from the bank out into the sluice from both the island and the south bank, and the trap proper is made of slats which extend about eight inches above the top of the water. The details of the construction of the trap are not shown by the record, and are probably immaterial. It appears that considerable quantities of rough fish, or nongame fish, are taken from the river by means of this trap. A few game fish are caught in the trap, but these are put back into the river. The trap has been in operation for many years.

Regardless of the question of the constitutionality of chapter 377 of the Acts of 1899, which act amends chapter 127 of the Acts of 1895, which is a general act for the protection of fish in the State of Tennessee, we are of the opinion that the general act passed by the General Assembly of 1923 operates to repeal by implication the general act of 1895, being chapter 127, and all amendatory acts thereto, where the provisions of the Act of 1923 are in conflict with chapter 127 of the Acts of 1895, and amendatory acts thereto. Chapter 102 of the Acts of 1923 purports to be a general enactment, creating and establishing for the State of Tennessee a department of game and fish, and to provide means and agencies for its maintenance, and relating to the preservation, propagation and protection of game animals, wild birds and fishes for the State of Tennessee. The act is very comprehensive in its scope, and purports to be a full and complete act regulating and protecting game and fish in the State.

By the last section of chapter 102 of the Acts of 1923, the same being section 49, it is provided as follows:

"Section 49. Be it further enacted, that all Acts of the General Assembly in effect up to and at the time of the passage of this act, and relating to the game and fish, be, and the same are hereby repealed, provided this act shall not repeal and affect the act creating the Appalachian game preserve, or chapter 21, Acts of 1913, known as the trapping laws, or any special acts relating to Reel Foot Lake. Be it further enacted that in the event any provision or provisions, or any part or parts, of this act shall be questioned in any court, and shall be held to be invalid, the remainder of the act shall be held to be not invalidated, but shall remain in full force and effect."

By chapter 127 of the Acts of 1895 it is provided in the first section as follows:

"That it shall be unlawful for any person or persons to catch, kill or wound any fish in any of the streams, lakes, rivers or ponds in the State of Tennessee by seine, trap, gun grabbling with hands, gig, poison, dynamite or in any way or by any contrivance or device whatsoever, except by rod or line, or trot line; provided, first the provisions of this section shall not apply to private ponds, and, second, to minnows not exceeding four and one-half inches in length, which may be caught exclusively for bait by dip net, not to exceed six feet in length."

Chapter 377 of the Acts of 1899 is as follows:

"An act to amend chapter 127 of an act passed May 7, 1895, and approved May 10, 1895, entitled 'An Act for the protection of fish in the State of Tennessee.'"

Section 1. Be it enacted by the General Assembly of the State of Tennessee, that chapter 127 of an Act passed May 7, 1895, and approved May 10, 1895, entitled "An Act for the protection of fish in the State of Tennessee," be so amended as to allow the erection of fall fish traps in Knox county, Tennessee, on any sluice of any river in said county, where said sluice is not used for navigation; provided that the party erecting said fish trap shall be the owner of both banks of said sluice.

Section 2. Be it further enacted, "That the slats on said fish trap shall not be less than one and one-half inches apart."

This being an act amending chapter 127 of the Acts of 1895, and which act is a general act on the subject for the protection of fish in the streams, lakes, rivers or ponds, operates to except Knox county from the general provisions of section 1, of chapter 127 of the Acts of 1895. We are of the opinion that section 49 of chapter 102 of the Acts of 1923 operates to repeal, by specific language all acts then in

effect, and relating to ''The game and fish,'' except certain acts specifically referred to in said section.

We are therefore of the opinion that the Chancellor correctly held that even though the amendatory act, being chapter 377 of the Acts of 1899, is constitutional, it was repealed by the 1923 Act.

Since the act, chapter 377 of the Acts of 1899, is the only act upon which the defendants predicate their right to maintain the fish trap in question, and in the view we have taken, that is, that said act has been repealed by the provisions of chapter 102 of the Acts of 1923, it follows that we concur in the conclusion reached by the Chancellor that the fish trap in question is operated in violation of law.

It results that the assignments of error of the defendants are over-ruled.

We come now to consider the assignment of error of complainant, which is predicated upon the action of the Chancellor in holding and decreeing that the chancery court was without jurisdiction to enjoin the operation of this fish trap and to abate the same. Under this assignment of error it is the contention of the complainant that the right to prosecute in the criminal court for violations of the game and fish law is not the sole remedy. It is insisted that the title to game and fish is in the State, and held by the State for the use of all the people of the State, and that the maintenance of the fish trap in question, located as it is, is an encroachment upon the rights of the public, and is a nuisance, the abatement of which by injunction is within the jurisdiction of the chancery court.

The maintenance of this trap, while prohibited by the laws of the State, as we have above stated, is not declared by the acts referred to be a nuisance, nor is jurisdiction conferred on the chancery court to abate the operation of such traps. The act makes the operation of fish traps a misdemeanor, and provides the punishment, and gives the grand jury inquisitorial powers, and makes no further provision to prevent the unlawful operation of such traps. Except for the game and fish laws now in effect in this State it would not be unlawful to maintain and operate such a fish trap for the taking of fish in the streams of this State that are not navigable, hence, the maintenance of a fish trap such as is owned and operated by the defendants is not malum in se, but is malum inhibitum, because of the legislative inhibition and not because of any wrong in its self. We are of the opinion that the Chancellor correctly held that the chancery court was without jurisdiction to lend its injunctive aid to enforce the violation of the purely penal statute. The jurisdiction of a chancery court to enjoin a threatened nuisance, and to enjoin the continuation of the maintenance of a nuisance where there is not an adequate remedy at law, is inherent in a court of equity. But where

there is a plain remedy at law, in the absence of express statutory jurisdiction conferred, a court of chancery cannot take jurisdiction. As above stated, the operation of this fish trap, if unlawful is not without remedy, as the act specifically makes it a misdemeanor punishable by fine. The remedy being complete by a criminal prosecution in proper cases, it cannot be said that there is not an adequate remedy provided by law which affords relief against the violation of the statute. We do not mean to be understood as holding that in all cases where an act is made an offense by statute, punishable by fine or imprisonment, that the chancery court would not have jurisdiction to lend its injunctive aid. In cases where property is being destroyed, and private rights are being encroached upon, or irreparable damage would result, the jurisdiction of the chancery court may be invoked. But such is not this case.

We are therefore of the opinion that there was no error in the decree of the Chancellor in holding and decreeing that the chancery court did not have jurisdiction, and in dismissing the case.

It results that the decree of the Chancellor is affirmed. The cost of this appeal will be paid by the State of Tennessee, in the same way and manner as the cost of the cause was directed to be paid by the Chancellor.

Owen and Heiskell, JJ., concur.